# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Panorama Trust c/o<br>Wil Sanders, Trustee, | : | CASES CONSOLIDATED |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| Washington County Tax Claim Bureau<br>and Realty Star Capital, LLC | : | No. 1113 C.D. 2023 |
| | : | |
| Coal Street Dunlevy Trust<br>c/o Wil Sanders, Trustee, | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| Washington County Tax Claim Bureau<br>and Van Vorrhis Development, LLC | : | No. 1114 C.D. 2023 |
| | : | |
| 601 Beech Street Trust<br>c/o Wil Sanders, Trustee, | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| Washington County Tax Claim Bureau<br>and Matthew Stanisic | : | No. 1115 C.D. 2023 |
| | : | |
| 324 Tyler Avenue Trust<br>c/o Wil Sanders, Trustee, | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| Washington County Tax Claim Bureau<br>and Matthew Stanisic | : | No. 1116 C.D. 2023<br>Submitted: May 6, 2025 |

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge<br>
                HONORABLE LORI A. DUMAS, Judge<br>
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED: July 15, 2025


In these consolidated matters, Panorama Trust, Coal Street Dunlevy Trust, 324 Tyler Avenue Trust, 601 Beech Street Trust, and Wil Sanders (Sanders), who is Trustee for all four Trusts (collectively, Appellants), appeal from the August 29, 2023, order of the Court of Common Pleas of Washington County (trial court). The trial court denied Appellants' petitions to set aside the September 26, 2022, tax sale of four properties previously held by Appellants and bought at the sale by Realty Star Capital, LLC, Van Vorrhis Development, LLC, and Matthew Stanisic (Buyers). Upon review, we affirm.

## I. Factual and Procedural Background

On January 9, 2023, Appellants filed petitions to set aside the September 2022 tax sales of the four properties at issue. Reproduced Record (R.R.) at 4a-25a (trial court dockets). On May 9, 2023, Judge Michael Lucas of the trial court held a joint hearing in which Appellants, the Washington County Tax Claim Bureau (Bureau), and Buyers participated. *Id*. at 26a-27a.

Danielle Yoss (Yoss), the Bureau's distributions manager, helps prepare the Bureau's notices to property owners and prepared chronologies of the properties at issue. R.R. at 44a. Yoss testified that she and other Bureau personnel have had personal contact with Sanders within the past year, and he told them that 1 Tycoon Lane in Washington, Pennsylvania is his home address.[1] *Id*. at 49a-50a.

---

[1] Unless otherwise indicated, all addresses here are in Washington, Pennsylvania.

Yoss stated that as to the 324 Tyler Avenue property, the certified mail first sale notice was sent on August 19, 2022,[2] to the deed grantee address on East Beau Street, to the subject property at 324 Tyler Avenue, and to Sanders's home address at 1 Tycoon Lane. R.R. at 49a. Those notices were all returned as unclaimed. *Id*. at 61a-62a. On September 13, 2022, first class mail second notices of sale were sent to Beau Street, Tyler Avenue, and Tycoon Lane. *Id*. at 52a. According to Yoss, the second notice mailed to Beau Street was returned undelivered, but the second notices mailed to the other two addresses were not returned. *Id*. at 53a. Yoss stated that if certified mail is returned unclaimed, the Bureau keeps using that address, as it may still be valid, whereas first class mail returned as undeliverable or "not known" is considered invalid, but the Bureau will still send mail to addresses of record because it believes it is required to do so. *Id*. at 72a. Yoss's testimony concerning 324 Tyler Avenue is consistent with the documentary record in this matter, which includes proof of mailing of the second notices, specifically a "certificate of mail report" with a September 13, 2022, post office stamp. *See* Exh. #1 to May 9, 2023, Hr'g.

Yoss explained that for the 601 Beech Street property, the details were essentially the same as for the 324 Tyler Avenue property, including mailings to the property address, the deed grantee address, and Tycoon Lane. R.R. at 56a-57a. According to Yoss, the certified mail first notices were returned unclaimed, the first class mail second notice to Beau Street was returned, and the first class mail second notices to the subject property and Tycoon Lane were not returned. *Id*. Yoss's

---

[2] The documentary record confirms that for all four subject properties, the certified mail first sale notices were sent on August 19, 2022, and the first class mail second sale notices were sent on September 13, 2022.

2

testimony concerning 601 Beech Street is consistent with the documentary record of this matter, which includes proof of mailing of the second notices, specifically a "certificate of mail report" with a September 13, 2022, post office stamp. *See* Exh. #2 to May 9, 2023, Hr'g.

Yoss testified that as to the Panorama Trust Property, identified as Lot 6.392 in Washington, Pennsylvania, the certified mail first notice to the deed grantee address at Tycoon Lane was returned unclaimed, but the first class mail second notice sent to Tycoon Lane was not returned. *Id*. at 57a-60a. Yoss's testimony concerning Lot 6.392 is consistent with the documentary record of this matter, which includes proof of mailing of the second notices, specifically a "certificate of mail report" with a September 13, 2022, post office stamp. *See* Exh. #3 to May 9, 2023, Hr'g.

Yoss stated that as to the Coal Street property in Dunlevy, Pennsylvania, certified mail first notices were sent to Tycoon Lane and the Coal Street property address.[3] *Id*. at 61a. The certified mail first notice to Tycoon Lane was returned unclaimed. *Id*. The certified mail first notice mailed to the Coal Street address was "delivered and signed for on August 22, 2022," by an unidentified individual. *Id*. The first class mail notices sent to the other three addresses were not

---

[3] Yoss stated that certified mail first notices and first class mail second notices for the Coal Street property were also sent to a post office box in McMurray, Pennsylvania and to 1645 North Main Street in Washington because these were in records for some other properties associated with Sanders. R.R. at 61a. The certified mail first notice sent to the North Main Street address was returned unclaimed and the certified mail first notice sent to the post office box was not returned at all. *Id*. at 61a-62a. The first class mail notice sent to the North Main Street address was not returned but the first class mail notice sent to the post office box was returned. *Id*. at 62a. Sanders subsequently testified that the post office box was used by a former business partner of his and that the North Main Street address was "not [his] address." *Id*. at 95a & 115a. As these addresses would not have been viable to notify Sanders of the sale, we do not consider them further.

returned. Yoss's testimony concerning the Coal Street Property is consistent with the documentary record of this matter, which includes proof of mailing of the second notices, specifically a "certificate of mail report" with a September 13, 2022, post office stamp. *See* Exh. #4 to May 9, 2023, Hr'g.

Yoss stated that the Bureau has a "system to find addresses associated with the parcel owner." R.R. at 67a-69a. The Bureau would include the address on a parcel's deed and any other addresses retained in court records by the prothonotary of the trial court. *Id*. Voss did not personally do that for these properties and had no specific proof it had been done, but to the best of her knowledge, it was done here as it would be done routinely for "any other parcel." *Id*. She stated that Sanders had many dealings with the Bureau, sometimes in person, but she never personally told him that the four properties at issue were going to be sold at the September 2022 sale. *Id*. at 69a. She identified a W-9 tax form that he completed on October 25, 2022, for reimbursement of leftover funds from the tax sale of another property not at issue here. *Id*. at 69a-71a. He listed Tycoon Lane as his home address on that form. *Id*. & Exh. #8 to May 9, 2023, Hr'g.

Sanders also testified at the May 2023 hearing. R.R. at 80a. He owned over 40 properties for various lengths of time in Washington County over the past 30 years. *Id*. at 81a. He bought 80%-90% of them from the Bureau at tax sales but had not done so since about 2010. *Id*. at 82a. He went to the Bureau in person for business matters "quite a bit" in past years and had gone there 15-20 times in the past year and 3-4 times in August and September of 2022. *Id*. at 83a. He bought the Panorama Trust property (Lot 6.392) from its owner in 2018. *Id*. at 83a-84a. He bought the Coal Street property from a "repository" in 2011-12. *Id*. at 84a. He bought the 324 Tyler Avenue and Beech Street properties at sheriff's sales in 2014-

4

15. *Id*. at 84a-85a. He acknowledged prior litigation with the Bureau in 2012 concerning his lack of proper documentation for his use of trusts as property ownership vehicles and in attempts to change the tax address of his properties. *Id*. at 91a-93a.

Sanders stated that the taxes on the subject properties became delinquent in 2020 because tenants were not paying rent and because he had some health issues. *Id*. at 86a. He was hospitalized six or eight times in 2022 and specifically in August of that year. *Id*. During those hospitalizations, nobody else was able to attend to his business affairs. *Id*. at 87a. He confirmed that he lived at the Tycoon Lane address and came home between hospital stays but maintained that he did not receive any certified or first class mail notices there regarding the subject properties. *Id*. at 88a-89a, 98a & 115a-17a. The Tycoon Lane address is a new one and never had a post office listing until he built his house and began living there in 2015-16. *Id*. at 120a. He had past difficulty getting all of his mail, but in recent years, it has improved. *Id*. at 123a.

Raffaele Casale, the county's chief assessor and director of the tax revenue department since January 2022, also testified at the May 2023 hearing. R.R. at 125a. He has worked in the department for 16 years and now oversees both the assessment office and the Bureau, which is part of the revenue department. *Id*. at 125a-26a & 131a. In preparation for the hearing, he generated a list of 45 properties in which Sanders has some interest as an owner or trustee; for all delinquencies, including the subject properties, notices were sent to Tycoon Lane. *Id*. at 126a-27a & 129a-30a. Casale stated that since he took over, an owner can come in and change the contact address more easily and that if Sanders came in, asked to change the address on all of his properties to Tycoon Lane, and signed the paperwork, it would

5

have been done. *Id*. at 128a-29a. Casale stated that with regard to Bureau notices, "we have to do our due diligence, and send the notices to any known, good address." *Id*. at 133a. Even if the tax and revenue records may have one address of record, the Bureau's notices may go to "numerous addresses" on file. *Id*.

Alongside the Bureau's efforts to notify Sanders by mail of the September 2022 sale of the subject properties, the following events occurred. The record includes a transcript of October 12, 2022, proceedings before trial court Judge Gary Gilman. R.R. at 138a. These proceedings pertained to discrepancies between a September 9, 2022, order signed by the Bureau's attorney (Attorney Black) and a September 16, 2022, order signed by Judge Gilman. The September 9 order caption listed 13 properties to be excluded from sale and did not include the 4 subject properties, while the September 16 order also excluded the 4 properties at issue. Exh. #5 to May 9, 2023, Hr'g. Judge Gilman ultimately signed a reinstated version of the original order on October 12, 2022.[4] *Id*. at 141a-42a; Exh. #7 to May 9, 2023, Hr'g.

---

[4] The September 9 order was signed by Attorney Black but not by a judge. Exh. #5 to May 9, 2023, Hr'g. Judge Gilman signed the September 16 order, but the Bureau did not receive that order, so the properties at issue were sold at the September 2022 sale. Exh. #6 to May 9, 2023, Hr'g at 1; R.R. at 74a.

At the October 2022 proceedings, Sanders's attorney (Attorney Terrell) filed a motion to vacate the September 16 order, which "was modified contrary to [Attorney Black's] consent . . . ." R.R. at 139a. Terrell explained that after Black had approved the September 9 order, Terrell had modified it and "inadvertently" included the four subject properties although they were not included in the order that Black had signed. *Id*. Terrell asked that the September 9 order be reinstated in its original form, and the trial court did so. *Id*. at 139a-40a. It is unclear why this was needed because by that time, the subject properties had already been sold. The short transcript of the proceeding does not address this. However, it may have been done to ensure a complete trial court record.

At the May 2023 hearing in this litigation, all three orders were admitted into evidence. Sanders testified that in late August or early September 2022, he learned through an online search that some of his properties were subject to sale and that through Attorney Terrell, he asked the Bureau for an extension to pay his delinquencies. R.R. at 88a-89a & 117a. He initially stated that he did not know the four subject properties were to be sold. *Id*. He then stated that based on the September 16 order, which included those properties in the list of parcels to be excluded from the September 2022 sale, he believed all of his properties were safe. *Id*. at 91a.

Sanders was asked by Judge Lucas: "In late August, you knew that properties you owned were being exposed for sale?" R.R. at 91a. Sanders replied: "I think that has already been established." *Id*. When asked again by the judge, Sanders stated: "That's why I contacted my attorney." *Id*. The judge then asked: "But it's fair to say that in late August you knew that these properties for which we're here today were being exposed for sale?" *Id*. at 118a. Sanders again replied: "That's why I contacted my attorney." *Id*. Sanders acknowledged knowing that he had delinquencies but stated that he did not believe any of his properties were going to be sold in September 2022. *Id*. at 107a. None of his tenants at the subject properties told him that they received delinquency or sale notices or that the properties had been posted. *Id*. at 121a-22a.

Sanders acknowledged that he visited the Bureau before the September 2022 sale and that "a few days later," the Bureau sent him an email "with statements of delinquencies on all [of his] properties." R.R. at 106a. However, he maintained that he did not learn about or talk with anyone about his delinquencies, including as to the four subject properties, until after the sale, which was also the first time he

7

learned that those properties had been sold. *Id*. at 108a-09a. He stated that he was surprised because he thought all of his properties with delinquencies had been protected by the September 16 order, even though he inconsistently maintained that he never saw or reviewed that order before the sale. *Id*. at 109a.

After the May 2023 hearing, the trial court issued an August 29, 2023, opinion and order denying Sanders's petitions to set aside the sale of the four subject properties. Trial Ct. Op., Aug. 29, 2023, at 1-8. The trial court credited the Bureau's evidence and determined that its mailed notices of sale for those properties complied with the Real Estate Tax Sale Law (RETSL).[5] *Id*. at 4-8.[6] Appellants appealed to this Court.[7] In a supplemental opinion, the trial court relied on its August 2023 opinion. Trial Ct. Op., Nov. 13, 2023, at 1-2.

---

[5] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.601-.609.

[6] The trial court also concluded that Sanders had actual notice of the impending sale of those properties and that his testimony to the contrary was not credible. Trial Ct. Op., Aug. 29, 2023, at 4-8. The trial court specifically addressed the September 9 order signed by Attorney Black, which did not exclude the four subject properties from sale, and the September 16 version of the order that was presented to Judge Gilman, which did exclude the properties from sale. Trial Ct. Op., Aug. 29, 2023, at 7. The trial court concluded that the September 16 version of the order "misled Judge Gilman into believing that the Bureau consented to an order that purported to postpone" the sale of the properties at issue when that was not the case. *Id*. The trial court opined that even if the September 16 version of the order was "unintentional and the product of some confusion," the Bureau was not at fault and the court was "unable to suspend its disbelief and accept [Sanders's] new assertion that he was unaware" that the properties were to be sold. *Id*.

[7] The trial court consolidated these matters; in a March 15, 2024, *sua sponte* order, this Court did so as well.

## II. Issues & Arguments

Appellants assert that the trial court erred in concluding that the Bureau complied with the mailing notice requirements of the RETSL.[8]  Appellants' Br. at 24-29.  The Bureau and Buyers (Appellees) respond that the Bureau's mailed notices complied with the RETSL even if Sanders claimed he did not receive them[9] and that additional efforts were not required because the Bureau already mailed the notices to every known address it had for the subject properties, including Sanders's home on Tycoon Lane.  Appellees' Br. at 3-9.[10]

## III. Discussion

Section 602(e) of the RETSL requires tax claim bureaus to mail notices of tax sales to property owners as follows:

> (e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:
>
> (1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.
>
> (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least

---

[8] This Court's review of a trial court's order in a tax sale matter is limited to determining whether the trial court erred as a matter of law, rendered a decision that is unsupported by the evidence, or abused its discretion.  *City. of Phila. v. Rivera*, 171 A.3d 1, 4 n.7 (Pa. Cmwlth. 2017).

[9] Appellants also assert that the trial court erred in concluding that Sanders had actual notice of the impending sale because the evidence showed only that he knew there were delinquencies on the subject properties, but not that he knew they were subject to the September 2022 sale.  Appellant's Br. at 17-24.  Because, as discussed below, we agree with the trial court that the Bureau complied with its statutory notice requirements, we do not reach the question of actual notice.

[10] Appellees Matthew Stanisic and Van Vorrhis Development, LLC, the buyers of three of the four subject properties, filed a brief with this Court, which the Bureau joined.

ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. § 5860.602(e).[11]

"The Bureau bears the burden of showing adequate notice under whatever RETSL provision is applicable[.]" *In re Tax Claim Bureau of Columbia Cnty.*, 329 A.3d 811, 816 (Pa. Cmwlth. 2025). "The purpose of a tax sale is not to strip an owner of his property but rather to insure the tax on the property is collected. *Murphy v. Monroe Cnty. Tax Claim Bureau*, 784 A.2d 878, 883 (Pa. Cmwlth. 2001). As such, the notice provisions of the RETSL "are to be strictly construed . . . to prevent the deprivation of property without due process." *Id*.

"[W]here notice is at issue, the proper focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the [bureau] comply with the requirements of the statute." *Steinbacher v. Northumberland Cnty. Tax Claim Bureau*, 996 A.2d 1095, 1099 (Pa. Cmwlth. 2010) (quotation marks omitted). With regard to mailings, "proof of a mailing raises a rebuttable presumption that the mailed item was received and it is well-established that the presumption under the mailbox rule is not nullified solely by testimony

---

[11] Section 602 also provides rules for noticing sales by publication and posting, but Appellants do not challenge the Bureau's notice in those capacities.

denying receipt of the item mailed." *City of Phila. v. Rivera*, 171 A.3d 1, 10 n.12 (Pa. Cmwlth. 2017) (*Rivera*) (quotation marks omitted).

In Tax Sale of Real Property Situated in Jefferson Township, 828 A.2d 475 (Pa. Cmwlth. 2003) (*Jefferson Township*), the bureau's first certified mail notices were returned unclaimed. *Id.* at 477. The bureau's second notices mailed via first class mail were not returned. *Id.* The owner did not dispute that the notices were mailed to the correct address. *Id.* This Court upheld the trial court's determination that the bureau complied with Section 602(e) of the RETSL and did not need to undertake further efforts as set forth in Section 607.1(a) of the RETSL, 72 P.S. § 5860.607a(a) (requiring bureau to undertake "reasonable efforts to discover the whereabouts" of an owner when certified mail notice is returned unclaimed, the receipt is not returned or returned but defective, or in other circumstances "raising a significant doubt as to" whether the owner has received the mailed notice).[12] We concluded that compliance with Section 602(e) is met and no more is needed where the Bureau uses the correct address for its mailed notices and any further efforts would be redundant. *Id.* at 480 (stating that "while the [b]ureau did not check the county's recorder of deeds and prothonotary offices, nothing in the record suggests that such a search would have revealed anything other than the address to which the notices were mailed."); *see also Sobolewski v. Schuylkill Cnty. Tax Claim Bureau* (Pa. Cmwlth., No. 117 C.D. 2019, filed July 31, 2019), slip op. at 8-9, 2019 WL 3436516, at *4 (unreported) (relying on *Jefferson Township* to uphold sale where

---

[12] Section 607.1(a) of the RETSL was added by the Act of July 3, 1986, P.L. 351.

11

certified mail notice was returned unclaimed, but bureau had the correct address and first class mail second notice was not returned as undeliverable).[13]

Here, the trial court credited the Bureau's notice evidence and found as fact that the Bureau's mailing of the certified mail first sale notices and first class mail second notices satisfied Section 602(e). Trial Ct. Op., Aug. 29, 2023; Trial Ct. Op., Nov. 13, 2023, at 1. The trial court also credited the Bureau's evidence that it employed a system for each notice to be sent to all possible known addresses for the subject property, including the deed addresses, addresses from court records, and any other address attached to a property; the trial court characterized this as a "belt and suspenders approach." Trial Ct. Op., Aug. 29, 2023, at 6-7.

We agree. The trial court credited Yoss, the Bureau's witness, who testified that for all four subject properties, the Bureau sent certified mail first notices and first class mail second notices to all addresses that it had on file for those properties, including Sanders's acknowledged current home address on Tycoon Lane, the deed grantee addresses for the properties, and the addresses of the properties themselves. R.R. at 49a-62a. The documentary record, including the stamped proof of mailing, supports Yoss's testimony as to the Bureau's actions regarding these properties specifically and as a course of business generally. *Id*. at 49a-62a; Exh. #1-#4 to May 9, 2023, Hr'g. Although the certified mail notices were returned unclaimed, the second notices sent by regular mail, particularly to the properties and to Sanders's home address on Tycoon Lane, were not returned. This satisfied Section 602(e)(2), which requires that when certified mail first notices are not acknowledged, second notices must be sent by first class mail to the owner's

_____

[13] Under Section 414(a) of this Court's Internal Operating Procedures, an unpublished memorandum opinion of this Court issued after January 15, 2008, although not binding precedent, may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

"last known post office address by virtue of the knowledge and information possessed by the bureau[.]" 72 P.S. § 5860.602(e)(2).

As such, this case is analogous to *Jefferson Township* and *Sobolewski*, where the owners did not dispute that the bureaus used the correct address and, although the certified mail initial notices were returned to the bureaus, the subsequent first class notices were not returned to the bureaus. Moreover, nothing in this record refutes the presumption that the Bureau's second notices sent by first class mail reached Sanders despite his testimony to the contrary, which the trial court did not deem credible. As such, the Bureau complied with Section 602(e) of the RETSL.[14]

## IV. Conclusion

In light of the foregoing, the trial court did not err in concluding that the Bureau complied with Sections 602(e) and 607.1(a) of the RETSL. As such, the trial court's August 29, 2023, order denying Appellants' petition to set aside the sale is affirmed.[15]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[14] As in *Jefferson Township* and *Sobolewski*, Sanders's acknowledgement that the Tycoon Lane address is his current home address and Yoss's credible testimony that Sanders asked the Bureau to use that address for his mailings meant that the Bureau was not required to engage in additional efforts beyond those it routinely conducts in these matters. Section 607.1a of the RETSL requires a bureau to engage in such efforts when circumstances suggest that the bureau must "discover the whereabouts" of the owner. 72 P.S. § 5860.607a(a). Where, as here, there is no doubt that the bureau's address is correct, Section 607.1a is not at issue.

[15] As noted above, in light of the Bureau's compliance with the RETSL's mailing requirements, which is dispositive of this appeal, we do not reach whether Sanders had actual notice that the four subject properties were to be sold at the September 2022 sale. We do, however, join the trial court in denouncing the result of the manipulation of the September 9 order. We share the trial court's displeasure with what occurred here.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Panorama Trust c/o<br>Wil Sanders, Trustee,<br>    Appellants | : | CASES CONSOLIDATED |
| | : | |
|    v. | : | |
| | : | |
| Washington County Tax Claim Bureau<br>and Realty Star Capital, LLC | : | No. 1113 C.D. 2023 |
| | | |
| Coal Street Dunlevy Trust<br>c/o Wil Sanders, Trustee,<br>    Appellants | : | |
| | : | |
|    v. | : | |
| Washington County Tax Claim Bureau<br>and Van Vorrhis Development, LLC | : | No. 1114 C.D. 2023 |
| | | |
| 601 Beech Street Trust<br>c/o Wil Sanders, Trustee,<br>    Appellants | : | |
| | : | |
|    v. | : | |
| | : | |
| Washington County Tax Claim Bureau<br>and Matthew Stanisic | : | No. 1115 C.D. 2023 |
| | | |
| 324 Tyler Avenue Trust<br>c/o Wil Sanders, Trustee,<br>    Appellants | : | |
| | : | |
|    v. | : | |
| | : | |
| Washington County Tax Claim Bureau<br>and Matthew Stanisic | : | No. 1116 C.D. 2023 |

# **O R D E R**

AND NOW, this 15th day of July 2025, the August 29, 2023, order of the Court of Common Pleas of Washington County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge